# ZAZZALI, FAGELLA, NOWAK, KLEINBAUM & FRIEDMAN
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

ONE RIVERFRONT PLAZA, SUITE 320
NEWARK, N.J. 07102-5410
Telephone: (973) 623-1822
Telecopier: (973) 623-2209

150 West State Street
Trenton, New Jersey 08608
Telephone: (609) 392-8172
Telecopier (609) 392-8933

www.zazzali-law.com

ANDREW F. ZAZZALI (1899-1969)

ANDREW F. ZAZZALI, JR.
ROBERT A. FAGELLA**
KENNETH I. NOWAK***
RICHARD A. FRIEDMAN
PAUL L. KLEINBAUM*
EDWARD H. O'HARE*
SIDNEY H. LEHMANN (1945-2012)
COLIN M. LYNCH**

COUNSEL
JAMES R. ZAZZALI***

GENEVIEVE M. MURPHY-BRADACS**
EDWARD M. SUAREZ, JR.
CYNTHIA REVESZ‡
AILEEN M. O'DRISCOLL*
MARISSA A. McALEER**
FLAVIO L. KOMUVES*
JAMES R. ZAZZALI, JR.

OF COUNSEL
KATHLEEN NAPRSTEK CERISANO
JASON E. SOKOLOWSKI
WILLIAM A. PASCARELL (1934-2010)

*Also admitted Pennsylvania
**Also admitted New York
***Also admitted New York & D.C.
‡New York Only

**Please Reply to Newark**

January 9, 2015

**Via Electronic Filing**
Honorable Katharine S. Hayden
United States District Court Judge
Frank R. Lautenberg U.S. P. O.
   Courthouse Building, Room 311
Newark, New Jersey 07102

    Re:    **American BD Company v. Local 863 I.B. of T. Pension Plan**
             **Docket No. 2:13-cv-3699-KSH-CLW**

Dear Judge Hayden:

On behalf of defendant, Local 863 I.B. of T. Pension Plan (the "Pension Plan"), we respectfully submit this letter brief to advise the Court of the recent enactment of a statute that materially affects the above referenced case. To the extent that permission for this filing is required under Loc. Civ. R. 7.1(d)(6), we respectfully request that the Court entertain this submission because it discusses a newly-enacted statute that was not in existence when briefing closed in this case.

163665.doc

The newly enacted statute, the Multiemployer Pension Reform Act of 2014 ("MPRA"),[1] confirms the Pension Plan's position that the "highest contribution rate" used in calculating a withdrawal liability payment schedule for employers that withdrew prior to the MPRA's enactment properly included contribution rate surcharges imposed by the Pension Protection Act of 2006.

The Pension Plan argued in its motion briefs[2] that the "highest contribution rate at which an employer had an obligation to contribute" used in calculating an employer's withdrawal liability payment schedule[3] includes *all* components of the contribution rate to which the employer was obligated prior to its withdrawal. In the case of an employer withdrawing from a multiemployer plan in critical condition (as defined by the Pension Protection Act of 2006 - "PPA"), one such component is a PPA-imposed contribution rate surcharge.[4] The Pension Plan noted its reading of PPA is impliedly supported by amendments to ERISA's withdrawal liability calculation methodology made later by the Worker, Retiree, and Employer Recovery Act of 2008 ("WRERA"). WRERA amended ERISA Section 305(e)(9)(B), 29 U.S.C. §1085(e)(9)(B), to provide expressly that a contribution rate surcharge may not be considered in the first of the two withdrawal liability calculations: the determination of unfunded vested liabilities allocable to a withdrawn employer (per ERISA Section 4211(c)(2), 29 U.S.C. §1391(c)(2)). However, WRERA did not provide for exclusion of a PPA surcharge in determining the second calculation:

---

[1] The MPRA, enacted December 17, 2014, is set out as "Division O – Multiemployer Pension Reform" of the Consolidated and Further Continuing Appropriations Act of 2015, P.L. 113-235.

[2] *See* Defendants' Brief in support of cross-motion, ECF No. 19-1, at pp. 11-22; Defendants' Reply Brief, ECF No. 23, pp. 2-5.

[3] The formula is set out in ERISA Section 4219(c)(1)(C)(i), 29 U.S.C. §1399(c)(1)(C)(i).

[4] The 10% surcharge is imposed by ERISA Section 305(e)(7)(A), 29 U.S.C. §1085(e)(7)(A).

the withdrawn employer's payment schedule. ERISA Section 4219(c)(1)(C)(i). This action, we said, demonstrated Congress' intent that a PPA rate surcharge be included in calculating a payment schedule (the issue before this Court). If the exclusion of a surcharge had been intended to apply to both calculations the WRERA amendment would have expressly so provided.

This is the only logical inference that can be drawn from the WRERA amendments of 2008, *i.e.* a Congressional intent that a PPA surcharge be included in determining a withdrawn employer's payment schedule. However, Congress has recently changed its view on the matter, and mandated that *prospectively*, the surcharge is not to be included in the payment schedule formula. Section 109(a) of the MPRA[5] changes the ERISA formula (in Section 4219(c)(1)(C)(i)) for calculating a payment schedule as follows:

> [Section 305](g) ADJUSTMENTS DISREGARDED IN WITHDRAWAL LIABILITY DETERMINATION.—
> \*\*\*
> (2) SURCHARGES.—Any surcharges under subsection (e)(7) shall be disregarded in determining the allocation of unfunded vested benefits to an employer under section 4211 *and in determining the highest contribution rate under section 4219(c)*, except for purposes of determining the unfunded vested benefits attributable to an employer under section 4211(c)(4) or a comparable method approved under section 4211(c)(5). [added language highlighted].

While this change in the law clearly excludes the use of the surcharge, Congress expressly provided too, in MPRA Section 109(c), that the change is only effective prospectively with respect to surcharges:

> (c) EFFECTIVE DATE.—The amendments made by this section shall apply to benefit reductions and increases in the contribution rate or other required

---

[5] Section 109 is entitled "Disregard of Certain Contribution Increases for Withdrawal Liability Purposes" and is a further indication that Congress regards surcharges to be employer contributions.

contribution increases that go into effect during plan years beginning after December 31, 2014 and to surcharges the obligation for which accrue on or after December 31, 2014.

If Congress viewed the pre-MPRA law as excluding surcharges in calculating withdrawal liability payments, there would have been no need for the new provision at all. Further, Congress' making the amendment prospective (rather than retroactive) establishes that the change is a repeal, rather than a codification, of existing law.[6]

American BD's withdrawal liability accrued at a time when the law required inclusion of the 10 percent surcharge. As such, it was properly included when the Fund Trustees fixed the quarterly sum due from American BD for its withdrawal liability.

Respectfully submitted,

/s/ Kenneth I. Nowak
Kenneth I. Nowak
Flavio L. Komuves
Counsel for Defendant IBT Local 863 Pension Fund

cc: Robert E. Levy, Esq.

38630-1042

---

[6] Another repeal of prior law made by Section 109 provides for the disregard of contribution rate increases required by rehabilitation or funding improvement plans adopted by multiemployer plans deemed in endangered or critical condition from the "highest contribution rate" used in any liability calculations. These previously were included.

163665.doc